**Eric C. DANNER, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71A03–1001–CR–13.**

Court of Appeals of Indiana.

July 29, 2010.

Jeffrey E. Kimmell, South Bend, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Eric C. Danner ("Danner") appeals from his convictions after a bench trial of dealing in cocaine, possession with intent to deliver over three grams[1] as a Class A felony and possession of marijuana[2] as a Class A misdemeanor. Danner presents the following restated issues for our review:

I. Whether the trial court erred by stating at the suppression hearing that Danner had the burden of proving the warrantless search of his car violated his rights, thus entitling Danner to *de novo* appellate review of the trial court's decision to admit the evidence; and

II. Whether the warrantless search of Danner's car was conducted in contravention of written police department policy, the Fourth Amendment to the United States Constitution, and Article I, Section 11 of the Indiana Constitution such that admission of the seized evidence constitutes reversible error.

We affirm.

## FACTS AND PROCEDURAL HISTORY[3]

On January 30, 2005, Paula Rogers ("Rogers") was working the night shift as shift manager at an Arby's restaurant located on 1125 Lincolnway West in South Bend, Indiana. Rogers was in the back office doing paperwork as she monitored a new sixteen-year-old employee who was working the drive-through window. At approximately 6:00 p.m. that evening, a woman attempted to place an order at the drive-through speaker with the new employee, but the employee could not understand the request. Rogers was wearing a headset that allowed her to hear the conversation between the employee and customer and to communicate with her employee. When Rogers heard the woman become more agitated, Rogers suggested to her employee that she direct the customer to the drive-through window. By the time Rogers reached the drive-through window to help, the woman in the car was at the window and said, "Okay. I'll bring my ass inside." *Tr.* at 23.[4]

A man, later identified as Danner, was driving the vehicle, which he parked near the drive-through window and side door of the restaurant. The woman from the car came into the store accompanied by Danner and a two-year-old boy and proceeded to engage in a heated conversation about the order. They were served, paid for their food, and sat down in the dining room to eat. The third employee present at the Arby's restaurant that evening called the police.

South Bend Police Officer Anthony Ieraci ("Officer Ieraci") responded to the dis-

---

1. *See* Ind.Code § 35–48–4–1(b).

2. *See* Ind.Code § 35–48–4–11.

3. Oral argument was held on June 16, 2010 at Trine University, the host site of Hoosier Boys State. We extend many thanks. First, we thank counsel for the quality of the oral and written arguments, for participating in post-argument discussions with the audience, and for commuting to Angola. We especially thank Trine University for their accommodations and the Hoosier Boys State delegates in the audience for their thoughtful post-argument questions.

4. The hearing on the motions to suppress, motion to reconsider, the trial, and sentencing hearing were transcribed and bound separately. The suppression hearing transcript will be cited to as *"Supp. Tr."*, the motion to reconsider hearing will be cited to as *"Recon. Tr."*, and the sentencing hearing transcript will be cited to as *"Sent. Tr."*.

patch and spoke with Rogers about the incident. Rogers requested that Officer Ieraci ask Danner, the woman, and child to leave the restaurant. When Officer Ieraci approached them and asked them to leave, the two adults were belligerent with the officer at first, but then agreed to leave. They told Officer Ieraci that they would have to call for a ride. Officer Ieraci asked them if they arrived in the brown Buick parked in the parking lot, but the two denied that the car was theirs and told the officer that they had been dropped off at the restaurant. Officer Ieraci spoke with Rogers, who pointed to the brown Buick and told him that the customers had arrived in that car.

South Bend Police Corporal Betsy Culp ("Corporal Culp") arrived, and Officer Ieraci explained the situation to her. Rogers saw the customers leaving through the front door and asked Corporal Culp where they were going. Corporal Culp told Rogers that the customers were walking away because they had arrived there on foot. When Corporal Culp asked Danner and the woman about the brown Buick, they denied arriving at the restaurant in the car.

Corporal Culp went outside to the parking lot to investigate and, while looking through the driver's side of the Buick, observed a clear plastic bag on the passenger's seat containing a green leafy substance that, due to her training, she recognized as probably being marijuana. As soon as she saw what she suspected was marijuana, Corporal Culp realized that the car would have to be impounded pursuant to South Bend Police Department's written policy of impounding vehicles containing evidence of a crime. Corporal Culp opened the door of the car, smelled the strong odor of burnt marijuana coming from inside the car, and radioed the infor-

mation to Officer Ieraci, who recorded the couple's information.

Corporal Culp searched the car and, under a jacket located between the areas for the driver and passenger on the front bench seat, discovered a clear bag holding several smaller bags each containing a white substance, which she suspected was cocaine. Inside a pocket of the jacket she found a piece of paper bearing Danner's name, and she also observed a hand-rolled marijuana cigarette in the ashtray. Field tests of the substances were positive for marijuana and cocaine. Laboratory testing of the cocaine revealed that the bag contained 4.87 grams of crack cocaine.

South Bend Police Department Sergeant Eric Downey ("Sergeant Downey") arrived at the scene, and Corporal Culp informed him of her discovery of marijuana and crack cocaine and obtained his approval to impound the car. Sergeant Downey retrieved a set of keys from both Danner and the woman, and Corporal Culp confirmed that the keys were keys to the brown Buick car in the parking lot.

Danner and the woman received their *Miranda* warnings after which Danner admitted the marijuana was his and that he and the woman were smoking a marijuana cigarette on their way to Arby's. Danner was interviewed by Corporal Culp and South Bend Police Department Narcotics Unit Lieutenant Michael Critchlow at the police station. After receiving his *Miranda* warnings, Danner stated that he took approximately half an ounce of crack cocaine to Arby's to give it to another person who failed to arrive there. This admission was consistent with his prior admission to officers at the restaurant.

The State charged Danner with one count of Class A felony dealing in cocaine, possession with intent to deliver over three grams, one count of Class A misdemeanor possession of marijuana, one count of Class

A misdemeanor taking a child to a nuisance, and one count of Class D felony maintaining a common nuisance. Prior to trial, Danner filed motions to suppress the evidence discovered in the car. After a hearing on the motions, the trial court denied Danner's request to suppress the evidence, concluding that Corporal Culp correctly seized the marijuana, properly searched the car prior to impounding the car, and did not contravene Danner's rights under the state and federal constitutions. Danner filed a motion to reconsider the denial of his motions to suppress the evidence. After a hearing on the motion, the trial court denied Danner's motion to reconsider.

A bench trial was held on December 4, 2009. After the State rested, Danner renewed his motion to suppress. The trial court denied the motion and found Danner guilty of misdemeanor possession of marijuana and felony dealing in cocaine, possession with intent to deliver over three grams and found Danner not guilty of the remaining charges against him. At Danner's sentencing hearing held on December 17, 2009, the trial court imposed an aggregate sentence of thirty years imprisonment. Danner now appeals.

## DISCUSSION AND DECISION

### I. Burden of Proof in a Motion to Suppress

■ Danner argues that the trial court improperly allocated the burden of proof to him in the suppression hearing and rendered its decision on the issue under that mistaken premise. The following exchange took place at the beginning of the suppression hearing:

THE COURT: Okay. We have a motion to suppress in *State v. Eric Danner.* We have marijuana and cocaine allegedly seized from an automobile and the parties stipulate that it was not pursuant to a search warrant. And the parties stipulated or agreed that the burden of going forward shifts to the State. The burden of proof on the motion to suppress, however, remains with the defendant. And the burden is at what level, [defense counsel]? Clear and convincing, beyond a reasonable doubt, or by a preponderance?

[DEFENSE COUNSEL]: By a preponderance of the evidence.

THE COURT: Thank you. And you would, of course, agree?

[THE STATE]: Absolutely, your Honor. Thank you.

THE COURT: Okay. So you're proceeding?

[THE STATE]: Yes, your Honor.

THE COURT: There you go.

*Supp. Tr.* at 3.

■ This is an appeal from a conviction after a completed trial and not an interlocutory appeal from the denial of Danner's motion to suppress. Where a defendant does not perfect an interlocutory appeal from a trial court's ruling on a motion to suppress, but objects to the admission of the evidence at trial, the issue on appeal is more appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial. *Packer v. State,* 800 N.E.2d 574, 578 (Ind.Ct.App.2003). However, in this situation, the evidence to be admitted was seized from Danner's car during a warrantless search. We conduct a *de novo* review of a trial court's ruling on the constitutionality of a search or seizure. *Belvedere v. State,* 889 N.E.2d 286, 287 (Ind.2008). However, we defer to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. *Id.* at 287–88. We do not reweigh the evidence, but consider conflicting evidence most favorable to the trial court's ruling. *Id.* at 288.

Although the trial court mistakenly stated at the hearing on the motion to suppress that the burden of proof rested with Danner, we find no reversible error in that statement and will conduct a *de novo* review of the trial court's decision on the constitutionality of the search.

## II. Admissibility of Evidence

### A. South Bend Police Department Policy

■ At the time of Danner's arrest, the South Bend Police Department Policy Manual provided the following guidance to officers on the issue of impounding vehicles.

#### 469.00 VEHICLE IMPOUNDS

Listed below are the guidelines for Officers to follow in impounding autos:

A. All impounds must be authorized by a Supervisor.

\* \* \*

K. Criminal Involvement

Impound the auto if it is necessary for obtaining evidence.

\* \* \*

N. General

Impounding vehicles must be done on an "as needed" basis. Do not impound vehicles in an attempt to impose an additional cost or punishment to the person arrested.

*Appellant's App.* at 28, 30, 31.

During the hearing on Danner's motion to reconsider the trial court's ruling on his motion to suppress evidence, the trial court stated the following regarding the written police department policy on impounding vehicles and the admissibility of the evidence seized by Corporal Culp:

Look at K, criminal involvement. Impound the auto if it is necessary for obtaining evidence. Was there criminal involvement? Absolutely. The car was the scene of illegal smoking of marijuana. It was the scene of possession of marijuana. There's criminal involvement.

*Recon. Tr.* at 22.

Danner argues that the evidence seized during the warrantless search of his car should have been excluded because Corporal Culp did not follow written police department policy on impounding vehicles. The crux of his argument, under 469.00 paragraph A, is that Corporal Culp did not first consult with her supervisor prior to impounding the vehicle; *ergo,* the fruits of the ensuing, allegedly invalid inventory search should have been excluded. Corporal Culp testified that, upon observing the marijuana in the car, she made the decision to impound the car. After conducting the inventory search, Corporal Culp told her supervisor that she was impounding Danner's car. Corporal Culp's supervisor, Sergeant Downey, testified at trial that while he did not remember the specifics of his authorization to impound Danner's car, he authorized the impoundment "somewhere along the line." *Tr.* at 115–16.

Danner also argues that under 469.00 paragraph N, the evidence should be excluded because "[t]he only apparent need for an impound in this case was to avoid the inconvenience of seeking approval from the court or even a supervisor prior to conducting the nonconsensual, warrantless entry and search" of the car. *Appellant's Br.* at 8–9.

While paragraph A of the written police department policy requires the approval of a supervisor in order to impound vehicles, it makes no reference to the timing of that approval. Danner argues that the approval has to be prior to impounding the vehicle. However, what Danner seems to be arguing is that Corporal Culp could not conduct the inventory search based upon

her belief that the car should be impounded prior to receiving actual approval from her supervisor to impound the car. The written police department policy in the record does not answer that question. While evidence collected during an inventory search prior to seeking supervisor approval to impound would be susceptible to exclusion had the supervisor subsequently disapproved the decision to impound, such is not the case here.

The inferences present in the record before this court support the conclusion that Sergeant Downey approved the impoundment prior to the car physically being towed to a lot where it could be secured. Sergeant Downey testified that he was Corporal Culp's supervisor and that he approved the impoundment of Danner's vehicle. The record supports the trial court's conclusion that department policy was followed.

Under paragraph K of the written police department policy, a vehicle is to be impounded if necessary for obtaining evidence of criminal involvement. The baggie containing marijuana was visible through the car window and led Corporal Culp to the conclusion that there was evidence of criminal involvement in the car. Again, based upon the record before us, her decision to impound, which was later approved by her supervisor, was valid under paragraph K of the written police department policy, and the evidence was properly admitted.

### B. Fourth Amendment

■■■ The Fourth Amendment protects persons from unreasonable search and seizure, and this protection has been extended to the states through the Fourteenth Amendment. U.S. Const. amend. IV; *Krise v. State*, 746 N.E.2d 957, 961 (Ind. 2001). Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Halsema v. State*, 823 N.E.2d 668, 676 (Ind.2005). When a search or seizure is conducted without a warrant, the State bears the burden of proving that an exception to the warrant requirement existed at the time of the search or seizure. *Id.* The propriety of a warrantless search is subject to *de novo* review. *Engram v. State*, 893 N.E.2d 744, 748 (Ind.Ct.App.2008), *trans. denied.*

■■■ One exception to the warrant requirement is probable cause to believe an operable vehicle contains contraband or evidence of a crime. *Gibson v. State*, 733 N.E.2d 945, 951 (Ind.Ct.App.2000). The United States Supreme Court has stated that when there exists probable cause to believe that a vehicle contains evidence of a crime, a warrantless search of the vehicle does not violate the Fourth Amendment because of the existence of exigent circumstances arising out of the likely disappearance of the vehicle. *Id.* at 951–52 (citing *California v. Acevedo,* 500 U.S. 565, 569, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (citing *Carroll v. United States,* 267 U.S. 132, 158–59, 45 S.Ct. 280, 69 L.Ed. 543 (1925))). It is a well recognized principle that assuming probable cause, automobiles and other vehicles may be searched without warrants "where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Id.* at 952 n. 5. In addition, as long as the search is supported by probable cause, a warrantless search of a vehicle may also include a search of a container or package found in the vehicle. *Id.* Facts necessary to demonstrate the existence of probable cause for a warrantless search are not materially different from those which would authorize the issuance of a warrant if presented to a magistrate. *Id.* Probable cause to issue a search warrant exists where the facts and circumstances would lead a reasonably prudent person to

conclude that a search of those premises will uncover evidence of a crime. *Id.*

In *Sayre v. State,* 471 N.E.2d 708, 712 (Ind.Ct.App.1984), we explained the difference between the plain view doctrine and an open view.

> *Coolidge* [*v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) ] and its progeny cover the situation ... where a government agent, after an intrusion into a constitutionally protected area, sees contraband in plain view and seizes it without a search warrant covering the contraband seized. The *Coolidge* requirements are applied to determine whether the items so seized were obtained within a valid exception to the fourth amendment's prohibition of unreasonable searches and seizures. However, a close situation often confused with the plain view doctrine occurs when a police officer sees contraband from an area that is not constitutionally protected, i.e., before an intrusion, e.g. where a police officer sees something in an open field, on the body of a person, within a building, or within a motor vehicle[.] In these situations, sometimes referred to as "open view," no "search" in the constitutional sense has occurred. Because there is no search, *Coolidge* need not be followed.

(internal citations omitted).

In *Commonwealth v. Sergienko,* 399 Mass. 291, 503 N.E.2d 1282, 1284 (1987), a police officer parked his cruiser next to the defendant's car in a parking lot owned by the city and located between the fire and police stations. The lot was used for parking police cruisers and private vehicles of each department and members of the public visiting either the police or fire stations. *Id.* The defendant was an officer of the police department. *Id.* at 1283. The police officer left the station at approximately 3:15 a.m., noticed the defendant's car in the lot, and motivated by curiosity looked at the interior of the car, doing so by standing by the side of the vehicle and using a flashlight. *Id.* at 1284. He observed a roach clip on the front seat of the car and a hand-rolled cigarette he believed to be marijuana. *Id.* The officer tried to open the door to seize the items, but the door was locked. *Id.* He then returned to the police station where he called the police chief and relayed the information to him. *Id.* Later, the defendant, the police chief, and another officer went to the defendant's car where defendant unlocked the car and gave the hand-rolled cigarette to the police chief. *Id.* It was later confirmed that the cigarette contained marijuana. *Id.*

Although the Supreme Judicial Court of Massachusetts ultimately remanded the matter for further findings on the issue of consent to search, the court agreed with the Commonwealth's argument that the evidence was discovered during a plain view observation, which involves no physical intrusion and generally occurs in a non-protected area. *Id.* "Because there was no physical intrusion into the defendant's automobile when Sergeant Gendron observed the contraband, and the defendant had no reasonable expectation of privacy in the front seat of the automobile or the dashboard area" this was a plain view observation. *Id.*

The court made the following observation that is worth reproducing here:

> The Supreme Court has recognized the distinction advanced by the Commonwealth. In *Texas v. Brown,* 460 U.S. 730, 738 n. 4, 103 S.Ct. 1535, 1541 n. 4, 75 L.Ed.2d 502 (1983), the plurality opinion stated: "It is important to distinguish 'plain view,' as used in *Coolidge* to justify *seizure* of an object, from an officer's mere observation of an item left in plain view. Whereas the latter gener-

ally involves no Fourth Amendment search ... the former generally does implicate the Amendment's limitations upon seizures of personal property...."

Because a plain view observation does not implicate the Fourth Amendment, the "prior justification" requirement of the plain view doctrine need not be considered.

The key to understanding the distinction between the plain view doctrine and a plain view observation is a recognition that a plain view observation involves no intrusion into an area in which the defendant has a reasonable expectation of privacy.... What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.... Here, the defendant's automobile was parked in a parking lot open to and used by the public and the employees of both the police and fire departments. The marihuana cigarette was clearly visible on the dashboard ashtray. The general public could peer into the interior of the defendant's automobile from any number of angles; there is no reason [Gendron] should be precluded from observing as a police officer what would be entirely visible to him as a private citizen. There is no legitimate expectation of privacy ... shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers. In short, the conduct that enabled [Gendron] to observe the interior of [the defendant's] car ... was not a search within the meaning of the Fourth Amendment.

If the officer had been able to observe the illegal activity in the van by standing in the parking lot, or at some other vantage point where he was legally entitled to be, and either looking through the two side windows or the windshield, or peering through the partially open door, this initial observation would not have intruded on any expectation of privacy which the defendants could reasonably have had in the circumstances. Such an initial observation, made without physical intrusion into the vehicle, would have been lawful and could provide probable cause for the issuance of a warrant or, in exigent circumstances, for a warrantless seizure ... The use of the flashlight by Sergeant Gendron does not alter this conclusion.

*Id.* at 1284–85 (internal citations omitted).

In *Strangeway v. State,* 720 N.E.2d 724, 725 (Ind.Ct.App.1999), the defendant was stopped by police officers for a traffic violation and the officers requested identification from the defendant and his passenger. After checking the identification, the officers determined that the passenger had an outstanding warrant for his arrest. *Id.* While the passenger was exiting the defendant's vehicle, one of the officers observed a cellophane wrapper containing white pills that the officer believed were controlled substances on the seat of the automobile. *Id.* The pills were later identified as Hydrocodone, a schedule II controlled substance. *Id.* The officers then arrested the defendant because of the discovery of the suspected contraband and then conducted a search of the vehicle incident to the defendant's arrest. *Id.* at 725–26. The officers discovered a change purse containing crack cocaine. *Id.* at 726. The defendant sought to suppress the evidence discovered in his car. We held that "[t]he police search of the vehicle did not abridge Strangeway's Fourth Amendment rights because the search of the automobile was incident to an arrest based on probable cause; *i.e.* the observation of contraband in plain view." *Id.* at 727.

■ In this case, Corporal Culp was at the Arby's restaurant at the request of the employees and walked to the parking lot to investigate the only car in the parking lot, a car the employees claimed Danner had parked there, but which Danner disavowed. Through the window of Danner's car, Corporal Culp observed the marijuana on the front seat of Danner's car. We conclude based on the facts of this case that Corporal Culp's observation of the marijuana was a proper plain view observation providing the officer with probable cause.

■■ "[T]he 'ready mobility' requirement of the automobile exception ... mean[s] that all operational, or potentially operational, motor vehicles are inherently mobile, and thus a vehicle that is temporarily in police control or otherwise confined is generally considered to be readily mobile and subject to the automobile exception to the warrant requirement if probable cause is present." *Myers,* 839 N.E.2d at 1152. We have already concluded that probable cause was present in this case. Danner was disavowing the car in which contraband was visible to any passerby. Corporal Culp radioed Officer Ieraci about her discovery, and decided to impound the vehicle pursuant to department policy in order to secure evidence of criminal involvement and opened the door of the car to immediately conduct an inventory search of the vehicle during the process of which she discovered the cocaine. We conclude that for purposes of the Fourth Amendment analysis the evidence was correctly admitted.

### C. Article 1, Section 11

■ Article 1, Section 11 of the Indiana Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure,

shall not be violated...." Automobiles are among the "effects" protected. *Taylor v. State,* 842 N.E.2d 327, 334 (Ind.2006). Such a right under article 1, Section 11 is a "personal right of the individual whose person, house, papers or effects are searched or seized." *Peterson v. State,* 674 N.E.2d 528, 533–34 (Ind.1996), *cert. denied,* 522 U.S. 1078, 118 S.Ct. 858, 139 L.Ed.2d 757 (1998).

■ "While almost identical in wording to the federal Fourth Amendment, the Indiana Constitution's Search and Seizure clause is given an independent interpretation and application." *Myers,* 839 N.E.2d at 1153. To determine whether a search violated the Indiana Constitution, our courts must evaluate the reasonableness of the police conduct under the totality of the circumstances. *Id.* This requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search. *Id.* Our Indiana Supreme Court has explained the reasonableness evaluation as follows:

> [A]lthough we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.

*Litchfield v. State,* 824 N.E.2d 356, 361 (Ind.2005). The burden is on the State to show that each relevant intrusion was reasonable in light of the totality of the circumstances. *State v. Bulington,* 802 N.E.2d 435, 438 (Ind.2004).

■ The record reflects that Corporal Culp was told by the Arby's employees

that they first encountered Danner and the woman as the two sat in the car in the drive-through. The employees told the officer that Danner had parked the car in the parking lot, and the two came inside the restaurant with the child. Danner then disavowed ownership of the car, told another officer that they needed to call for a ride upon leaving the restaurant, and attempted to leave via an exit farthest from the car. Corporal Culp walked out to the parking lot and, while looking into the car, observed the bag containing a small amount of what appeared to be marijuana. We conclude that under the totality of the circumstances the police conduct in the search of Danner's car was reasonable and does not run afoul of Article 1, Section 11.

The trial court did not err by admitting the evidence seized during the search of Danner's car. The police officers followed written departmental policy and did not violate the protections afforded to Danner under the Fourth Amendment or Article 1, Section 11 of the Indiana Constitution.

Affirmed.

MAY, J., and MATHIAS, J., concur.