**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Mar 21 2014, 6:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CRAIG PERSINGER**
Marion, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HENRY D. HULL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 27A02-1305-CR-471 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE GRANT SUPERIOR COURT
The Honorable Dana J, Kenworthy, Judge
Cause No. 27D02-1104-FD-92

**March 21, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Henry D. Hull was convicted after a jury trial of possession of marijuana[1] as a Class D felony and was sentenced to three years executed. He appeals, raising the following restated issue for our review: whether the trial court committed fundamental error when it admitted marijuana evidence at trial.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On April 22, 2011, Marion Police Department Officer David Bennett responded to a dispatch of a disturbance at Dutch's Bar in Marion, Indiana. When he arrived at the bar, Officer Bennett encountered Hull, who identified himself to the officer as Kendall Hall. Hull told Officer Bennett that he had been robbed of some money and a phone in the 600 block of North Washington Street. Officer Bennett took Hull to a liquor store in the 700 block, and along the way, Hull pointed out a house at 621 North Washington Street. Hull changed his story several times, stating and then recanting that someone had pulled a gun on him and that he had been hit.

Other officers who responded to the disturbance spoke to the individuals at 621 North Washington Street and informed Officer Bennett that Hull's real name was Henry Hull and not Kendall Hall. When Officer Bennett asked Hull if Henry Hull was his real name, Hull said yes. Upon learning that Hull had given a false name, Officer Bennett called dispatch and asked them to run a warrant check. Officer Bennett was told by dispatch that Hull had a warrant for his arrest; he then placed Hull into custody and

---

[1] *See* Ind. Code § 35-48-4-11.

transported him to the Grant County Jail. During the booking process, the jail staff discovered a clear, plastic baggie, containing a brownish-green leafy substance, in one of Hull's shoes. The substance was later tested, and it was positive for marijuana and weighed 6.2 grams.

The State charged Hull with Class A misdemeanor possession of marijuana and filed a notice of intent to seek an enhanced penalty based upon a prior conviction. Prior to trial, Hull orally moved to suppress the marijuana evidence based upon the issuance of an invalid warrant for Hull's arrest. Neither party presented evidence, but Hull argued that, because he was arrested on a warrant that should not have been issued, the marijuana found in his possession during the search incident to arrest should be suppressed.

The trial court issued findings denying Hull's motion to suppress and took judicial notice of the procedures regarding warrants in Grant County. The trial court noted that, at the time of Hull's arrest on the warrant, the Grant County courts followed a long-standing practice of requiring an arrest warrant to be included in the original packet of documents in new case filings. *Appellant's App.* at 30. The Prosecutor's Office would put a sticky note on the front of the packet that said "in jail," although there was no evidence that a sticky note was or was not put on Hull's court documents. *Id*. The trial court found that, "[w]ithin the past year, an error was committed, and a [d]efendant [was] arrested for charges for which he had already been arrested," which was likely Hull in this case. *Id*. Following that error, Grant County courts' procedure was changed so that arrest warrants were only prepared in cases where defendants had not already been arrested. *Id*.

3

The trial court additionally took judicial notice of the CCS and pleadings in Hull's case in which the warrant had been issued. It noted that, although the probable cause affidavit and the charging information indicated that Hull had already been arrested, the CCS stated that the clerk of the court was to issue to the Grant County Sheriff a warrant for Hull's arrest. The trial court stated, "[i]t appears in this case that the Prosecutor's Office put the Court on clear notice in the pleadings that [Hull] had already been arrested; despite that fact, the Court/Clerk issued the warrant anyway." *Id*. at 31.

Hull did not object to the admission of the marijuana at trial. A jury found Hull guilty of Class A misdemeanor possession of marijuana. Hull then admitted that he had a prior conviction, which elevated his conviction to a Class D felony. The trial court sentenced him to three years executed. Hull now appeals.

## DISCUSSION AND DECISION

Generally, we review the trial court's ruling on the admission of evidence for an abuse of discretion. *Whatley v. State*, 908 N.E.2d 276, 280 (Ind. Ct. App. 2009) (citing *Noojin v. State,* 730 N.E.2d 672, 676 (Ind. 2000)), *trans. denied*. However, as Hull concedes, he did not object to the admission of the evidence at trial. Failure to object to the admission of evidence at trial normally results in waiver and precludes appellate review unless its admission constitutes fundamental error. *Id*. (citing *Cutter v. State,* 725 N.E.2d 401, 406 (Ind. 2000)). Therefore, to avoid waiver, Hull attempts to invoke the fundamental error doctrine. The fundamental error doctrine is extremely narrow and requires an error so prejudicial that a fair trial is impossible. *Sasser v. State,* 945 N.E.2d 201, 203 (Ind. Ct. App. 2011), *trans. denied*. "To rise to the level of fundamental error, an error 'must

4

constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process.'" *Whatley*, 908 N.E.2d at 280 (quoting *Maul v. State,* 731 N.E.2d 438, 440 (Ind. 2000)).

Hull argues that the trial court committed fundamental error when it allowed the marijuana evidence to be admitted into evidence at trial because it was discovered as a result of an improper arrest. Because Hull had already been arrested and bonded out of jail on the charge for which the warrant had been issued, he contends that he was illegally arrested. He asserts that any search incident to that illegal arrest was in violation of the Fourth Amendment to the United States Constitution and Article I, section 11 of the Indiana Constitution, and it was fundamental error to admit such evidence.

Our Supreme Court has held that "an error in ruling on a motion to exclude improperly seized evidence is not per se fundamental error." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). The Court reasoned:

> [B]ecause improperly seized evidence is frequently highly relevant, its admission ordinarily does not cause us to question guilt. That is the case here. The only basis for questioning Brown's conviction lies not in doubt as to whether Brown committed these crimes, but rather in a challenge to the integrity of the judicial process. We do not consider that admission of unlawfully seized evidence ipso facto requires reversal. Here, there is no claim of fabrication of evidence or willful malfeasance on the part of the investigating officers and no contention that the evidence is not what it appears to be. In short, the claimed error does not rise to the level of fundamental error.

*Id*. Here, Hull has not made any claim of fabricated evidence or willful misfeasance of Officer Bennett and no contention that the evidence is not what it appears to be.

5

Accordingly, Hull's claimed error does not rise to the level of fundamental error under the reasoning of *Brown*.

In the present case, when Officer Bennett learned that Hull had given him a false name, the officer contacted dispatch to run a warrant check and was advised that there was a warrant issued for Hull's arrest in a different case. Hull was taken into custody on the basis of that warrant, and when he was booked into jail, the marijuana was discovered in his shoe. However, it was later determined that Hull had already been arrested on the warrant and bonded out of jail and that the warrant had been inadvertently reissued. Hull conceded at trial that Officer Bennett acted in good faith when he arrested Hull because the officer had no knowledge that the warrant was invalid. *Tr*. at 40.

Under the Fourth Amendment, Hull concedes that, pursuant to the United States Supreme Court's opinion of *Herring v. United States*, 555 U.S. 135 (2009), his challenge fails. In that case, one of the arresting officers encountered the defendant, who the officer knew to be "no stranger to law enforcement," and checked to see if there were any outstanding warrants for the defendant's arrest in his county or a neighboring county. *Id*. at 137. The warrant clerk in the neighboring county advised the officer that the defendant had an active warrant out of that county, and the defendant was arrested; during a search incident to arrest, methamphetamine was found on the defendant's person. *Id*. However, there had been a mistake about the warrant, as it had been recalled five months earlier. *Id*. at 137-38. The Supreme Court held that, although a Fourth Amendment violation did occur, the evidence would not be excluded because the police conduct was not "sufficiently deliberate that exclusion can meaningfully deter it" or "sufficiently culpable that such

6

deterrence is worth the price paid by the justice system." *Id.* at 144. The Court stated that the exclusionary rule "was crafted to curb police rather than judicial misconduct" and was improper when the error arises from "nonrecurring and attenuated negligence" and is "thus far removed from the core concerns that led us to adopt the rule in the first place." *Id.* at 142, 144. As Hull does not distinguish *Herring* from the present case and has made no contention that Officer Bennett engaged in any sort of culpable conduct that should trigger the exclusionary rule's application, Hull's argument under the Fourth Amendment fails.

Under Article I, section 11 of the Indiana Constitution, to determine whether a search violated the Indiana Constitution, our courts must evaluate the reasonableness of the police conduct under the totality of the circumstances. *Danner v. State*, 931 N.E.2d 421, 431 (Ind. Ct. App. 2010), *trans. denied*. The Indiana Supreme Court has explained the reasonableness evaluation as follows:

> [A]lthough we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.

*Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005). The burden is on the State to show that each relevant intrusion was reasonable in light of the totality of the circumstances. *Danner*, 931 N.E.2d at 431 (citing *State v. Bulington*, 802 N.E.2d 435, 438 (Ind. 2004)).

In the present case, after Officer Bennett found out that Hull lied to the officer about his identity, the officer ran a warrant check and discovered that Hull had an arrest warrant. Officers are permitted to rely upon information provided by dispatch and are not required

7

to perform their own independent investigation into the validity of a warrant prior to relying on the information and arresting an individual. *See Kindred v. State*, 524 N.E.2d 279, 292 (Ind. 1988) ("The police force being a unit wherein there is police-channel communication, if an officer acts in good faith reliance upon such information, the arrest will be deemed to have been based on probable cause so long as sufficient knowledge to establish probable cause exists within the organization."). Therefore, the degree of concern, suspicion, or knowledge that a violation has occurred was very strong in the present case. The degree of intrusion, Hull's arrest and subsequent incarceration, was also very strong here. However, Hull's arrest was a necessary and reasonable intrusion considering the extent of law enforcement needs and government interests at stake. *See Shotts v. State*, 925 N.E.2d 719, 727 (Ind. 2010) (finding that based on information from an Alabama officer and an NCIC entry Indiana officers reasonably believed there was probable cause that defendant had committed the crime and that he was armed and at large in Indiana). Under the totality of the circumstances, Officer Bennett's conduct was reasonable and not a violation of the Indiana Constitution.

We disagree with Hull's claim that *Shotts* is distinguishable from the present case. In *Shotts*, when the defendant was arrested based on a warrant issued in Alabama, a weapon was found in his possession, and he was charged with a violation of Indiana's gun laws. *Id*. at 722. The defendant challenged his arrest and discovery of the evidence based on a claim that the Alabama warrant was not supported by probable cause. *Id*. Our Supreme Court considered whether the evidence in the Indiana case must be suppressed if the Alabama warrant was defective and concluded it did not under both the Fourth Amendment

and the Indiana Constitution. *Id*. at 724, 726, 727. Under the Fourth Amendment, the Court concluded that the trial court correctly found that the officers acted in good faith reliance on a warrant they reasonably presumed to be valid. *Id*. at 724-25. Pursuant to the Indiana Constitution, the Court found that, under the totality of the circumstances, the officers' actions were reasonable considering the governmental interests and the steps they took in investigating and arresting the defendant. *Id*. at 727.

The same outcome should follow in the present case. Based upon the information received from dispatch, Officer Bennett reasonably presumed that the warrant for Hull was valid, and his conduct in investigating and arresting Hull were reasonable under the totality of the circumstances. Hull's claim under Article I, section 11 of the Indiana Constitution fails. We conclude that the trial court did not commit fundamental error when it admitted the evidence discovered during the search incident to Hull's arrest.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.