ATTORNEY FOR APPELLANT
Anthony V. Luber
South Bend, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Nicole M. Schuster
Deputy Attorney General
Indianapolis, Indiana

## In the
## Indiana Supreme Court

**FILED**

Apr 15 2010, 12:17 pm

*Kevin S. Smith*

**CLERK**

of the supreme court,
court of appeals and
tax court

No. 71S03-0905-CR-253

DAVID A. SHOTTS,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the St. Joseph Superior Court, No. 71D02-0708-CF-236
The Honorable John Marnocha, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 71A03-0808-CR-400

**April 15, 2010**

**Boehm, Justice.**

David Shotts was arrested in Indiana by local law enforcement officers who had been advised of an outstanding Alabama warrant for his arrest. In the course of the arrest, Shotts was found in possession of an unlicensed handgun, which resulted in charges of violations of Indiana law. We hold that the Indiana arrest in reliance on information from Alabama law enforcement officers and the National Crime Information Computer did not violate either the Fourth Amendment or the Indiana Constitution. The evidence of his possession of a handgun is therefore admissible in this Indiana prosecution.

**Facts and Procedural History**

On the morning of August 16, 2007, Detective Randy Kaps of the St. Joseph County, Indiana, Police Department received a call from Detective Pete Hose of the Madison County, Alabama, Sherriff's Department in Huntsville. Hose told Kaps that the previous day the Huntsville Police Department had obtained a felony arrest warrant for David Shotts and that Shotts was believed to be in Mishawaka in St. Joseph County, Indiana. Kaps confirmed through the National Crime Information Computer (NCIC) that there was an active Alabama arrest warrant for Shotts. Kaps then contacted Corporal Daniel Wisniewski of the St. Joseph County Warrants Division and Indiana State Trooper Mike Robinson. Wisniewksi and Robinson verified the Alabama warrant for Shotts's arrest in the NCIC, obtained his Mishawaka address from the Indiana Bureau of Motor Vehicles (BMV), and established surveillance of his residence. Because Shotts was believed to be armed, Kaps arranged for a SWAT team to be on standby.

After meeting with Wisniewski and Robinson at the stakeout, Kaps returned to his office to prepare an Indiana warrant authorizing entry into Shotts's home. While Kaps was still in his office, Wisniewski and Robinson saw Shotts leave his apartment. Shotts was identified from a BMV photograph and arrested as he began to drive out of the parking lot of the apartment complex. As Shotts exited his car, the officers observed a revolver in a holster on his right hip. It was later determined that Shotts had no license for the handgun, and had been convicted of attempted theft in Alabama in 1999.

The Alabama warrant was based on a theft and a murder in Alabama. Because Shotts was found with an unlicensed firearm, he was also charged with two violations of Indiana law: class A misdemeanor possession of a handgun without a license and class C felony possession of a firearm by a convicted felon. Ind. Code §§ 35-47-2-1, -23(c) (2004). Shotts filed a pretrial motion to suppress the evidence of his handgun possession, arguing that the Indiana officers arrested him without "any warrant or legal authority," and that the subsequent search was the product of an arrest that violated both the Fourth Amendment and Article 1, § 11 of the Indiana Constitution. Specifically, Shotts argued that the affidavit supporting the Alabama warrant did not establish probable cause to arrest him and therefore the Alabama warrant was facially

2

deficient under <u>Kinnaird v. State</u>, 251 Ind. 506, 242 N.E.2d 500 (1968).  After a hearing, the trial court denied Shotts's motion, finding the officers acted in good faith in arresting Shotts on the basis of the NCIC information.  In a bench trial, Shotts was convicted of violating Indiana firearm laws after the parties stipulated to the Alabama arrest warrant, Wisniewksi's police report, the booking report, a lab fingerprint report, and Shotts's prior Alabama conviction.

Shotts appealed, contending that the Alabama warrant was defective and therefore the trial court erred in denying his motion to suppress and admitting the evidence of his weapon possession.  The Court of Appeals agreed, reasoning that the affidavit supporting the Alabama warrant "merely <u>alleged</u> that Shotts had committed a crime" and "did not provide any facts from which a neutral magistrate could have drawn his own conclusion as to the existence of probable cause."  <u>Shotts</u>, 907 N.E.2d at 137.  Based on this shortcoming, the Court of Appeals reasoned that although the Indiana officers acted in good faith, the Alabama officer who obtained the warrant on the basis of a facially defective affidavit did not.  <u>Id.</u> at 138–39.  As a result, the good-faith exception was inapplicable.  <u>Id.</u>  We granted transfer.

**Standard of Review**

The standard of appellate review of a trial court's ruling on a motion to suppress is similar to other sufficiency issues.  <u>Litchfield v. State</u>, 824 N.E.2d 356, 358 (Ind. 2005).  We determine whether substantial evidence of probative value exists to support the trial court's ruling.  <u>Id.</u>  We do not reweigh the evidence and consider conflicting evidence most favorably to the trial court's ruling.  <u>Id.</u>

**I. Full Faith and Credit**

As a threshold issue, the State contends that the Full Faith and Credit Clause of the Federal Constitution requires that Indiana courts honor the determination of the Alabama court that issued the warrant.  We have found little authority directly addressing whether a probable cause determination on an application for an arrest warrant is a "judicial Proceeding" as that term is used in Article IV, Section 1 of the Constitution of the United States.  We do not address that issue because we conclude that neither the Fourth Amendment, the Indiana Constitution, nor any requirement of Indiana law requires exclusion of the evidence in dispute in this case.

3

## II. The Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In general, the police must have probable cause or a warrant before making an arrest. Herring v. United States, 129 S. Ct. 695, 698 (2009). To encourage compliance with the Fourth Amendment, the evidence seized in violation of the Constitution must be excluded at trial unless an exception to this "exclusionary rule" applies. Id. at 699. But the amendment itself "contains no provision expressly precluding the use of evidence obtained in violation of its commands." Arizona v. Evans, 514 U.S. 1, 10 (1995). "The touchstone of the Fourth Amendment is reasonableness." United States v. Knights, 534 U.S. 112, 118 (2001). Accordingly, even when a violation occurs, the exclusionary rule does not apply when the police acted in good faith or in an objectively reasonable manner. Herring, 129 S. Ct. at 701.

Shotts raises several Fourth Amendment challenges to his arrest. His principal contention is that the Alabama warrant was not supported by evidence establishing probable cause for his arrest, and therefore the Indiana arrest was unlawful. He also points to the trial court's finding that "there was conflicting testimony as to whether the 'NCIC' system sufficiently indicated that the warrant was active" on the date of his arrest, and suggests that there may be an issue whether the warrant was properly entered in the NCIC. Shotts also argues that the officers did not act in good faith because they did not have a physical copy of the Alabama warrant when they arrested him, and therefore could not determine the warrant's sufficiency and could not reasonably rely on it. Shotts also argues that the Indiana officers should have contacted the Huntsville Police Department rather than the Madison County Sheriff's Department.

A valid arrest warrant must be supported by probable cause. U.S. Const. amend. IV. Probable cause turns on a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability" that the subject has committed a crime or evidence of a crime will be found. Illinois v. Gates, 462 U.S. 213, 238 (1983). To establish probable cause, an affidavit in support of the warrant must do more than state the conclusion of the affiant. Giordenello v. United States, 357 U.S. 480, 486 (1958). A

4

neutral and detached magistrate must draw his or her own conclusion whether probable cause existed and cannot act as a "rubber stamp for the police." Aguilar v. Texas, 378 U.S. 108, 111 (1964). In assessing the validity of an issued warrant, the reviewing court is "to determine whether the magistrate had a 'substantial basis' for concluding that probable cause existed." Figert v. State, 686 N.E.2d 827, 830 (Ind. 1997) (quoting Gates, 462 U.S. at 238–39). "[S]ubstantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination" of probable cause. Houser v. State, 678 N.E.2d 95, 99 (Ind. 1997) (discussing Gates, 462 U.S. at 236).

Here, Shotts relies primarily on Kinnaird v. State, 251 Ind. 506, 242 N.E.2d 500 (1968). He argues, and the Court of Appeals agreed, that "like the affiant in Kinnaird, the Alabama affiant merely alleged that Shotts had committed a crime" and failed to provide facts that would allow the magistrate to make a probable cause determination. Shotts, 907 N.E.2d at 137. The Court of Appeals found that a Fourth Amendment violation occurred "prior to the information being submitted to NCIC and the executing [Indiana] officers." Id. at 138. In other words, both Shotts's principal argument and the analysis of the Court of Appeals assess the Alabama magistrate's determination of probable cause under federal and Indiana precedent, and not the actions of the Indiana arresting officers.

At the outset, it is important to bear in mind what the issue in this case is and what it is not. We are addressing whether we are to suppress the evidence of Shotts's possession of a weapon in this Indiana prosecution charging violation of Indiana's gun laws. We are not addressing whether this evidence may be admitted in any prosecution in Alabama for the charges that gave rise to the Alabama warrant. The first issue, therefore, is whether only the reasonableness of the Indiana officers' conduct is required for a valid arrest, or is the Alabama probable cause determination also subject to challenge. It is well settled that in extradition proceedings the receiving state is not to review the probable cause determination of the demanding state. See, e.g., Bailey v. Cox, 260 Ind. 448, 452, 296 N.E.2d 422, 425 (1973) (discussing the Uniform Criminal Extradition Act, currently codified at I.C. § 35-33-10-3, and concluding that any challenge to the arrest warrant must be resolved in the demanding state). We find little direct authority addressing whether the same reasoning applies to evaluation of an

5

arrest in a receiving state—in this case Indiana—based on a warrant issued by another state—in this case Alabama. For the reasons explained below, we conclude that it does.

Even if the Alabama warrant was defective, suppression of the discovered gun in the Indiana proceeding "is not an automatic consequence." Herring, 129 S. Ct. at 698. Suppression of evidence under controlling Fourth Amendment precedent "turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." Id. Specifically, invalidity of a warrant does not necessarily require exclusion of evidence seized under its authority. Id. at 701. Even if a warrant is invalid for lack of probable cause, "the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant." Id. (quoting United States v. Leon, 468 U.S. 897, 922 (1984)). "[E]vidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" Illinois v. Krull, 480 U.S. 340, 348–349 (quoting United States v. Peltier, 422 U.S. 531, 542 (1975)). Put differently, the high cost associated with suppression is appropriate only where police acts are "sufficiently culpable" and suppression can "meaningfully deter" those acts. Herring, 129 S. Ct. at 702. The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" in light of "all of the circumstances." Leon, 468 U.S. at 922 & n.23.

The trial court found that the Indiana officers acted in good-faith reliance on a warrant they reasonably presumed to be valid. This finding is fully supported in the record and disposes of Shotts's claim under the Fourth Amendment. We think this conclusion follows inexorably from the Supreme Court's ruling in Herring. There, one of the arresting officers—who knew the defendant as "no stranger to law enforcement"—inquired of his county and a neighboring one whether there were any outstanding warrants for the defendant's arrest. Herring, 129 S. Ct. at 698. The warrant clerk in the neighboring county responded that her database included an active arrest warrant for the defendant. Id. When the clerk tried to retrieve the actual warrant, however, she learned that the warrant had been recalled and was no longer valid. Id. The clerk tried to report her error to the arresting officers, but they had already arrested the defendant and found contraband in his possession. Id. The Supreme Court held that the Fourth Amendment

6

violation did not merit exclusion of the seized contraband because the violative conduct was not "sufficiently deliberate that exclusion can meaningfully deter it," nor was it "sufficiently culpable that such deterrence is worth the price paid by the justice system." Id. at 702. Reviewing its own precedent, the Supreme Court found that exclusion was proper when the police engage in "intentional conduct that was patently unconstitutional," such as searching without a warrant in Weeks or with a "false warrant" in Mapp, but improper when the error results from "nonrecurring and attenuated negligence." Id. (discussing Weeks v. United States, 232 U.S. 383 (1914) and Mapp v. Ohio, 367 U.S. 643 (1961)). We think this case presents a much less compelling case for applying the exclusionary rule than the unsuccessful defendant presented in Herring itself. In Herring, the error was attributable to a failed communication between two counties in the same state. In that circumstance, at least both jurisdictions are chargeable with familiarity with the applicable procedure and law of the state. In the case before us today, as in Herring, the Indiana officers arrested Shotts based on an electronic record of a warrant and before physically retrieving that warrant. Id. at 698. But in Shotts's case, any flaw in the warrant was not attributable to Indiana at all. There is therefore even less reason to suppress the evidence in this case than the Supreme Court found insufficient in Herring.

Shotts cites no authority that either the Indiana officers' failure to procure a physical copy of the Alabama warrant prior to the arrest or their contact with the Madison County Sheriff's Department instead of the Huntsville Police Department was a "sufficiently culpable" act to require exclusion. It is undisputed that Detective Kaps received a call from a law enforcement officer in a sister state reporting an arrest warrant for Shotts and that Shotts may be armed and dangerous. Kaps checked the NCIC to verify the existence of the warrant before instructing officers Wisniewski and Robinson to establish surveillance at Shotts's residence according to BMV records. Wisniewski and Robinson also checked with the NCIC to verify the existence of the warrant. Having done so, it was reasonable for Wisniewski and Robinson to presume the warrant was valid and supported by probable cause. Shotts points to no evidence suggesting that the Indiana officers willfully delayed reviewing the Alabama warrant or its affidavit or avoided contacting the Huntsville Police Department in an attempt to violate his constitutional rights. In sum, Shotts does not identify anything that the Indiana officers did as culpable at all, much less rising to the level of culpable behavior the exclusionary rule seeks to deter. Indeed, letting an

7

armed fugitive remain at large while they attempted to take other steps to review the Alabama proceedings is objectively unreasonable.

There are also practical difficulties in Shotts's claim that officers enforcing a warrant from another state should be required to do more than the Indiana officers did in this case. Even if they had obtained a physical copy of the warrant, as Shotts argues they should have done, these officers were in no position to determine the constitutionality of the Alabama warrant without knowledge of Alabama warrant procedures. Specifically, some jurisdictions allow both oral and written evidence to provide the basis for a warrant, and impose different degrees of formality of communication. E.g., Ala. Code §§ 15-5-3, -4 (2008) (allowing oral testimony but requiring that the witness be deposed); I.C. § 35-33-5-8 (allowing oral testimony by telephone or radio or written testimony by FAX). See generally, 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment §4.3 (4th ed. 2004) (describing the different procedures in various jurisdictions).

Whether the Alabama officer knew or should have known that his testimony was insufficient to support a probable cause determination is for the Alabama courts to resolve. Exclusion by an Indiana court in a proceeding under Indiana law would not deter the Alabama officer who applied for the Alabama warrant. Moreover, the Alabama officer cannot be expected to know of and comply with Indiana case law, any more than the Indiana officers should be required to be conversant with procedures in other states. Herring reaffirmed that an officer cannot "obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." Herring, 129 S. Ct. at 703–04 (quoting Leon, 468 U.S. at 923 n.24). But Shotts has not demonstrated that the Alabama officer engaged in this sort of culpable behavior, and if he did the consequence should be exclusion in the Alabama proceeding, not exclusion in an Indiana prosecution where the Indiana authorities behaved reasonably and responsibly. Accordingly, the good-faith exception applies and Shotts fails in his Federal Fourth Amendment claim.

### III. The Indiana Constitution Claim

Although the search and seizure provision found in Article I, § 11 of the Indiana Constitution tracks the Fourth Amendment verbatim, our jurisprudence has focused on whether

8

the actions of the government were "reasonable" under the "totality of the circumstances." Litchfield v. State, 824 N.E.2d 356, 359 (Ind. 2005). The Indiana provision in some cases confers greater protections to individual rights than the Fourth Amendment affords. Holder v. State, 847 N.E.2d 930, 940 (Ind. 2006); Litchfield, 824 N.E.2d at 358–59; Mitchell v. State, 745 N.E.2d 775, 786 (Ind. 2001); Randall T. Shepard, Second Wind for the Indiana Bill of Rights, 22 Ind. L. Rev. 575, 577 (1989). But Article 1, § 11 of the Indiana Constitution does not demand a different result here.

In Litchfield we summarized the relevant factors in assessing reasonableness of a seizure as turning on a balance of: "1) the degree of concern, suspicion, or knowledge that a violation had occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." Litchfield, 824 N.E.2d at 361.

Here, based on the information from the Alabama officer and the NCIC entry, the Indiana officers reasonably believed that there was probable cause that Shotts committed a crime and that he was armed and at large in Indiana. The degree of intrusion—an arrest and incarceration—was equally strong. But the arrest was a necessary and reasonable intrusion considering the needs of law enforcement and governmental interests at stake. The Indiana officers had every reason to believe there was probable cause that Shotts had broken Alabama law. We have already noted the problem for law enforcement that any further requirements would impose on officers asked to enforce a warrant from another state. Under the totality of the circumstances, the Indiana officers' actions were reasonable considering the governmental interests and the steps they took in investigating and arresting Shotts. Accordingly, the Indiana officers acted reasonably and Shotts cannot prevail under the Indiana Constitution.

Much of the debate in Herring between the five Justices in the majority and the four dissenters focused on the extent to which the exclusionary rule was grounded in "a more majestic conception" than simple deterrence of improper law enforcement. Herring, 129 S. Ct. at 707 (Ginsburg, J., dissenting) (quoting Arizona v. Evans, 514 U.S. 1, 18 (1995) (Stevens, J., dissenting)). But we think the Herring dissenters would not find cause for concern here. As Justice Ginsburg, joined by Justices Stevens, Souter, and Breyer, noted in dissent in Herring,

9

applying the exclusionary rule to negligent as well as intentional police errors may have the salutary effect of encouraging monitoring of systems and procedures to avoid mistakes. <u>Id.</u> at 708 (Ginsburg, J., dissenting). And as Justice Breyer noted, errors by some agency other than the police may provide less reason to exclude erroneously seized evidence. <u>Id.</u> at 710–11 (Breyer, J., dissenting). Under the Indiana Constitution we need not resolve these issues today. If any flaw existed in the Alabama warrants, it was the product of an agency—whether Alabama law enforcement or Alabama judiciary—over which Indiana police have no control.

### Conclusion

Shotts's convictions for violations of Indiana firearms laws are affirmed.

Shepard, C.J., and Dickson and Rucker, JJ., concur.

Sullivan, J., concurs in result with separate opinion.

10

**Sullivan, Justice, concurring in result.**

I agree with the Court that Shotts's arrest was valid both as a matter of federal and state constitutional law irrespective of whether the Alabama warrant was valid. This is because the Indiana authorities behaved reasonably and responsibly upon receiving the call from police in Alabama reporting an arrest warrant—three different Indiana police officers each checked the NCIC to verify the existence of a warrant and there is no evidence that the Indiana officers acted improperly in any way. The reasonableness of their conduct was sufficient to meet the constitutional requirements for a valid arrest.

I vote to affirm Shotts's conviction without resorting to the recent United States Supreme Court exclusionary rule decision, Herring v. United States, 129 S. Ct. 695 (2009). In my view, the Court's lengthy discussion of Herring is unnecessary. Herring assumed that the defendant had been the victim of an unconstitutional arrest. Id. at 699. The question in Herring was whether the evidence seized during an unconstitutional arrest needed to be suppressed. Id. In contrast, the question here is whether Shotts's arrest was constitutional. Because the Court concludes that the arrest was valid, the handgun was validly seized without implicating the exclusionary rule.