**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DAVID A. SMITH**
McIntyre & Smith
Bedford, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN F. VANDEVANTER, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 59A01-1311-CR-484 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ORANGE CIRCUIT COURT
The Honorable Larry R. Blanton, Judge
Cause No. 59C01-0812-FA-116

**June 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**GARRARD, Senior Judge**

John F. VanDeVanter, Jr., appeals his convictions of dealing in methamphetamine, a Class A felony; possession of methamphetamine, a Class D felony; possession of marijuana, a Class A misdemeanor; and resisting law enforcement, a Class A misdemeanor. We affirm.

On December 3, 2008, Gaming Agent Clifton White was at work at an Indiana casino. During his shift, White received an email from his supervisor instructing him to notify Indiana State Police Trooper Mark Green if VanDeVanter arrived at the casino. At or around 7 p.m., casino staff informed White that VanDeVanter was present.

White called Trooper Green. Green contacted Indiana State Police Sergeant Dana Miller, who asked him to investigate. Green went to the casino with fellow Trooper Julie Schnell, where they met White. White and Green went to the casino's garage, where they found an SUV that Green was aware that VanDeVanter had driven in the past. Green contacted dispatch to confirm that he had correctly identified the SUV. Next, Green contacted State Trooper Brian Laroche, who worked with a K-9, and asked him to come to the casino. Green then returned to the casino's security office and sent Schnell to the garage to watch VanDeVanter's SUV.

Laroche arrived at the casino with his K-9 one hour after receiving Green's call. Laroche had his K-9 sniff around VanDeVanter's SUV and the vehicles parked on either side of it. The K-9 twice alerted to the presence of narcotics when it sniffed the driver's side door of the SUV. Trooper Green relayed this information to Sergeant Miller, who told him that she would request a search warrant.

2

Later, VanDeVanter finished gambling and left the casino. Schnell, who intended to keep VanDeVanter from getting into his SUV, approached him and asked if his name was John. VanDeVanter said no, turned around, and walked back toward the casino. Green intercepted him outside the casino and told him that a search warrant was being sought for his SUV.

Next, Green contacted Miller, who told him that a search warrant had been issued for VanDeVanter's person and the SUV. VanDeVanter, Green, and Schnell entered an enclosed hallway. VanDeVanter asked to see the search warrant, so Green told him they would not execute the warrant until Miller arrived with it. In the meantime, Green patted down VanDeVanter for safety. During the pat down, Green noticed a hard object in one of VanDeVanter's pants pockets and asked him what it was. At that point, VanDeVanter ran away, but Green and Schnell tackled him as he entered the casino. He struggled with the officers until they placed him in handcuffs.

During a subsequent search of VanDeVanter, officers discovered a cell phone and a green canister that contained a white substance in a baggie. The substance was later identified as .48 grams of methamphetamine. In addition, he was carrying $43,000 in cash and a key to the SUV.

Next, Green and other officers searched VanDeVanter's SUV. They unlocked the SUV using VanDeVanter's key. Once inside, the officers found a short, thick piece of plastic pipe on the floor in front of the driver's seat. The pipe had a cap on one end and a screw top on the other end. Upon opening the pipe, the officers found a set of digital scales; two plastic bags, each of which contained an off-white material; a plastic bag

containing a green and brown plant material; and a hollowed-out pen. The officers also found a cell phone in the SUV. In addition, they found a glass smoking pipe and $15,000 in currency in the center console.

The off-white material in the two bags was later identified as 242 total grams of methamphetamine. The plant material was later identified as 3 grams of marijuana. VanDeVanter's DNA was found on the hollowed-out pen and he was one of two contributors to DNA found on the glass pipe.

On December 5, 2008, Sergeant Miller and Indiana State Police Trooper Robert Hornbrook met with VanDeVanter and his then-attorney at the Orange County Jail. During that meeting, VanDeVanter told the officers he purchased methamphetamine from a person named Ron in Indianapolis, who in turn had obtained the meth from a man named Angel. He further stated he purchased the meth from Ron in quantities of one to two pounds for a price ranging from $16,000 to $17,500 per pound.

The State charged VanDeVanter with dealing in methamphetamine, a Class A felony; possession of methamphetamine, a Class A felony; possession of marijuana, a Class A misdemeanor; and resisting law enforcement, a Class A misdemeanor. The State later amended the possession of methamphetamine charge to a Class B felony.

VanDeVanter filed a motion to suppress, which the trial court denied after a hearing. He sought discretionary interlocutory review, but this Court's Motions Panel declined to accept jurisdiction. *VanDeVanter v. State*, Cause No. 59A01-1207-CR-335 (Ind. Ct. App. September 7, 2012).

4

The jury determined that VanDeVanter was guilty as charged except that it found him guilty of Class D felony possession of methamphetamine as a lesser included offense of the Class B possession charge. The trial court sentenced him accordingly, and this appeal followed.

## ISSUES

VanDeVanter raises the following restated issues:

I.    Whether the trial court abused its discretion in admitting evidence.

II.   Whether the evidence is sufficient to sustain his conviction for dealing in methamphetamine.

## DISCUSSION AND DECISION

### I. ADMISSION OF EVIDENCE

Although VanDeVanter first challenged the admission of evidence through a motion to suppress, he now appeals following a completed trial. Thus, the issue is appropriately framed as whether the trial court erred in admitting the evidence at trial. *Sugg v. State*, 991 N.E.2d 601, 606 (Ind. Ct. App. 2013), *trans. denied*.

The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion. *Id.* An abuse of discretion occurs where the decision is clearly against the logic of the facts and circumstances. *Id.* at 606-07. Where an alleged error also involves claims of legal error, we review questions of law de novo. *Purvis v. State*, 829 N.E.2d 572, 578 (Ind. Ct. App. 2005), *trans. denied*. We do not reweigh the evidence and consider conflicting evidence most favorable to the trial court's ruling. *Speer v. State*, 995 N.E.2d 1, 5 (Ind. Ct. App.

5

2013), *trans. denied*. We also consider uncontested evidence favorable to the defendant. *Id.*

A. Admission of Evidence Found on VanDeVanter and in His Vehicle

VanDeVanter argues that the admission of evidence obtained during the search of his person and his SUV violated the Fourth Amendment to the United States Constitution and article 1, section 11 of the Indiana Constitution.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Here, the officers searched VanDeVanter and his SUV pursuant to a search warrant. In deciding whether probable cause exists to issue a search warrant, the court must make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit, there is a fair probability that contraband will be found in a particular place. *Smith v. State*, 953 N.E.2d 651, 656 (Ind. Ct. App. 2011), *trans. denied*. The duty of a court reviewing the decision to issue a search warrant is to determine whether, based on the totality of the evidence, the issuing court had a substantial basis to conclude that probable cause existed. *Id.*

The affidavit requesting a search warrant noted that VanDeVanter's SUV was parked in the casino's parking lot and that a certified K-9 twice indicated the presence of narcotics in the SUV. The use of a trained narcotics detection dog generally does not implicate legitimate privacy interests subject to protection under the Fourth Amendment.

6

*Illinois v. Caballes*, 543 U.S. 405, 409, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005). Furthermore, a K-9's indication of the presence of narcotics in a vehicle is sufficient in itself to support the issuance of a search warrant. *Neuhoff v. State*, 708 N.E.2d 889, 891 (Ind. Ct. App. 1999). The court thus had a substantial basis to issue the search warrant, and the officers' subsequent search of VanDeVanter and his SUV did not violate the Fourth Amendment.

VanDeVanter contends that the officers lacked reasonable suspicion to support their investigation leading up to the arrival of the K-9 because they had no reason to believe he was breaking the law. However, the K-9's sniff of his car, which was parked in a public area, does not implicate any Fourth Amendment interests. We need not consider the officers' motivations for focusing on VanDeVanter or his vehicle.

Article 1, section 11 of the Indiana Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

The search and seizure provision in this section tracks the Fourth Amendment, but Indiana's jurisprudence focuses on whether the actions of government officials were reasonable under the totality of the circumstances. *Shotts v. State*, 925 N.E.2d 719, 726 (Ind. 2010). In assessing the reasonableness of a search or seizure, we consider: (1) the degree of concern, suspicion, or knowledge that a violation had occurred; (2) the degree of intrusion the method of the search or seizure imposed on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Id.*

7

In this case, the K-9 sniff of VanDeVanter's SUV took place in a public lot and did not impose any burden upon him. To the contrary, VanDeVanter continued his activities in the casino, unaware of any police activity. Once the K-9 alerted to the presence of illegal narcotics, the officers had a high degree of suspicion that a violation of the law had occurred and appropriately sought a search warrant. Trooper Schnell's attempt to keep VanDeVanter from entering his SUV was a minimal intrusion upon his activities, because she merely asked him his name.

Green and Schnell's detention of VanDeVanter while they waited for the search warrant to arrive was also a minimal intrusion when weighed against the strong degree of suspicion that a violation had occurred and the strong law enforcement need to prevent VanDeVanter from leaving with contraband. Under the totality of the circumstances, the officers' conduct was reasonable, and the admission of the results of the search into evidence did not violate article 1, section 11.

B. Admission of VanDeVanter's Statements to Trooper Hornbrook

VanDeVanter claims that the trial court should not have admitted Trooper Hornbrook's testimony about their December 5, 2008, conversation, during which VanDeVanter explained where he purchased methamphetamine. VanDeVanter says the testimony was inadmissible and irrelevant because it was evidence of an unrelated crime that unduly prejudiced him in the eyes of the jury.

Relevant evidence is that which has any tendency to make a fact more or less probable than it would be without the evidence. Ind. Evidence Rule 401. Only relevant

8

evidence is admissible at trial. Ind. Evidence Rule 402. In addition, pursuant to Indiana Evidence Rule 403:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Finally, Indiana Evidence Rule 404(b) is relevant here. It provides:

(b) Crimes, Wrongs, or Other Acts.

> (1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) *Permitted Uses; Notice in a Criminal Case.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent**,** preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

VanDeVanter says Trooper Hornbrook's testimony violated Rules 404(b), 403, and 402. The purpose of Rule 404(b) is to exclude evidence that would allow a jury to make the "forbidden inference" that a defendant committed the charged conduct because his or her past wrongdoing allegedly demonstrates a criminal propensity. *Hape v. State*, 903 N.E.2d 977, 995 (Ind. Ct. App. 2009), *trans. denied*. Thus, before allowing the State to introduce evidence of a defendant's prior bad acts, the court must consider whether the evidence is offered to prove something other than the defendant's bad character or propensity to commit the charged crime. *Id.* If the evidence is being offered for a permissible purpose under Rule 404(b), the court must then decide whether its probative value outweighs its prejudicial effect under Rule 403. *Id.*

9

Here, VanDeVanter's trial strategy was to deny that he possessed with intent to deliver the methamphetamine that was found in the SUV. He questioned the State's witnesses to establish that they did not see VanDeVanter drive the SUV on the date in question. In addition, he provided testimony from other witnesses who said he had left the SUV with a mechanic due to mechanical problems and that someone drove him to the casino that night in a different vehicle. During closing argument, his attorney stated, "John . . . was not there with an intent to deliver or distribute anything." Tr. p. 666. Based upon this strategy, Trooper Hornbrook's testimony about VanDeVanter's method for purchasing large quantities of drugs was relevant under Rule 402 and admissible for a purpose other than mere propensity. Specifically, the testimony helped to establish VanDeVanter's intent to deal the methamphetamine. *See Berry v. State*, 574 N.E.2d 960, 963 (Ind. Ct. App. 1991), *trans. denied*.

Next, we resolve the question of undue prejudice under Rule 403. The balancing of the probative value against the danger of unfair prejudice must be determined with reference to the issue to be proved by the evidence. *Bryant v. State*, 984 N.E.2d 240, 249 (Ind. Ct. App. 2013), *trans. denied*. The evaluation of whether the probative value of an evidentiary matter is substantially outweighed by the danger of unfair prejudice is a discretionary task best performed by the trial court. *Id.*

VanDeVanter asserts that Hornbrook's testimony portrayed him as an "avowed" methamphetamine dealer, a person who is "reviled" in Indiana. Appellant's Br. p. 29. The evidence was relevant to establish VanDeVanter's intent to distribute methamphetamine, which was a key issue at trial. It therefore had high probative value.

10

Furthermore, VanDeVanter made the statement to Hornbrook in the presence of his attorney with due opportunity to consult, so the statement was not the result of coercion or duplicity. In addition, other evidence established that VanDeVanter had a large amount of drugs in the SUV, so the jury was already aware that he could be considered a large-scale methamphetamine dealer. We cannot say that the prejudice arising from Hornbrook's testimony outweighed its probative value. The court did not abuse its discretion by admitting Hornbrook's testimony.

## II. SUFFICIENCY OF THE EVIDENCE

When reviewing a challenge to the sufficiency of the evidence underlying a conviction, we neither reweigh the evidence nor assess the credibility of witnesses. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). The evidence and all reasonable inferences drawn from it are viewed in a light most favorable to the verdict. *Id.* We affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

Here, VanDeVanter challenges his conviction for dealing in methamphetamine. To convict VanDeVanter of dealing in methamphetamine as a Class A felony, the State was required to prove beyond a reasonable doubt that he (1) knowingly or intentionally (2) possessed with intent to deliver (3) methamphetamine, pure or adulterated (4) in an amount greater than three grams. Ind. Code § 35-48-4-1.1 (2006).

VanDeVanter first argues that there is insufficient evidence that he possessed the 242 grams of methamphetamine that the officers found in the SUV, pointing out that he

11

spent most of the evening gambling. The possession element of the offense may be established by evidence of constructive possession. *Speer*, 995 N.E.2d at 10. For the State to prove constructive possession, it must prove the defendant had the intent and capability to maintain dominion and control over the contraband. *Id.* Intent to maintain dominion and control may be proven by circumstances including the defendant's incriminating statements, attempted flight, comingling of contraband with other items the defendant owns, or proximity to contraband in plain view. *Id.* When access to the premises is not exclusive, the State must show additional circumstances that point to the defendant's knowledge of the presence of the contraband. *Id.*

Here, the SUV was registered to VanDeVanter's mother, but Sergeant Miller previously saw him drive it. When Green and Miller searched VanDeVanter, they found the key to the SUV, which they used to unlock it. The methamphetamine was contained in a short but bulky plastic pipe that lay on the SUV's floor by the driver's side door, right underneath where a driver's feet would be. The pipe was tucked under a floor mat, but its presence under the mat was "obvious" when the officers opened the driver's door. Tr. p. 426.

VanDeVanter attempted to flee after the officers told him they intended to search him and the SUV. Finally, his DNA was found on two pipes in the SUV in close proximity to the contraband. A reasonable jury could conclude that VanDeVanter knew about the 242 grams of methamphetamine and constructively possessed it.

Next, VanDeVanter asserts there is no evidence he intended to distribute methamphetamine. Trooper Green told the jury that the amount of methamphetamine

12

discovered in the SUV was, in his experience, more than is kept for personal consumption. Possession of a large amount of an illegal substance is circumstantial evidence of intent to deliver. *Davis v. State*, 791 N.E.2d 266, 270 (Ind. Ct. App. 2003), *trans. denied*. VanDeVanter possessed 242 grams, which is well above the three-gram minimum needed to prove dealing in methamphetamine as a Class A felony.

In addition, Trooper Green further stated that the presence of the scales with the methamphetamine also indicated distribution or dealing of drugs rather than personal use. Trooper Hornbrook testified that VanDeVanter's possession of multiple cell phones (one on his person, one in the SUV) was also a common practice among drug dealers. Finally, VanDeVanter told Hornbrook that he purchased methamphetamine in one-to-two-pound parcels, an amount inconsistent with personal use. A reasonable jury could conclude from this evidence that VanDeVanter intended to distribute the methamphetamine that was found in the SUV. There is sufficient evidence to sustain his conviction for dealing in methamphetamine as a Class A felony.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

NAJAM, J., and BROWN, J., concur.

13