**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**SUSAN E. SCHULTZ**
Corydon, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RANDELL LEE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 31A01-1401-CR-10 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HARRISON SUPERIOR COURT
The Honorable Elizabeth W. Swarens, Judge Pro Tempore
Cause No. 31D01-1112-FD-989

**July 16, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Randell Lee[1] appeals his conviction for neglect of a dependent, as a Class D felony, and four convictions for cruelty to an animal, each as a Class A misdemeanor, following a jury trial. Randell raises two issues for our review, which we restate as follows:

1.    Whether the trial court abused its discretion when it admitted evidence seized pursuant to a search warrant.

2.    Whether the State presented sufficient evidence to support Randell's four convictions for cruelty to an animal.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In November of 2011, Jeri Warren was informed by her landlord that she had to get rid of seven cats she had living under her leased mobile home in Louisville, Kentucky. Warren called a no-kill shelter in Louisville, but the shelter informed her that all it could do for her was to post her story on its MySpace page, which it did. Thereafter, Samantha Lee, Randell's wife, called Warren based on the MySpace post. Samantha told her that she "took in strays" and offered to pick the cats up from Warren's residence. Tr. at 83. On November 16, Samantha arrived at Warren's residence and removed two of the cats.

The next morning, Warren attempted to call Samantha, but the number Samantha had provided Warren was disconnected. Warren then called the Better Business Bureau for Samantha's business address, obtained it, and drove to a location in Harrison County,

---

[1] There is confusion in the record over the spelling of Randell's first name. We follow the spelling employed by his counsel and the caption of the trial court's judgment of conviction.

Indiana. That location was the Lees' residence. When Warren arrived, she walked to the front door and immediately observed "[f]ilth and . . . a strong smell." Id. at 86. The smell was so strong "it would burn your eyes, your nose" just by "being at the front door." Id. at 87. Warren was "upset that [her] cats w[ere] living in that condition" and she promptly called the police. Id.

Officer Gary Gilley of the Harrison County Sheriff's Department responded to Warren's call and went to the Lees' residence. Upon arriving at the Lees' residence, Officer Gilley observed that "the yard was covered with . . . filth . . . [and] dog feces." Id. at 108. Officer Gilley knocked on the front door, which was behind a dog in a cage on the porch. The caged dog did not have food or water. There were also four caged chickens on the front porch, which also were without food or water. Officer Gilley "could smell a[n] odor of urine or ammonia . . . very strong on the porch," which "obvious[ly]" came from within the residence. Id. at 108-09. Through the front window, Officer Gilley could see "trash strewn about the house [and] what appeared to be animal feces on the floor," along with four or five cats inside the house. Id. at 110.

No one answered the front door in response to Officer Gilley's knock, and he walked around to the back of the house. There, he observed two dogs in cages "in the mud" with no bedding, food, or water. Id. at 112. One dog was muddy and wet and was "shivering." Id.

Based on his observations, Officer Gilley sought and received a search warrant for the Lees' residence. Upon returning to the residence and announcing that he would force his way in with the search warrant, Randell opened the front door. Officer Gilley

3

observed that the interior of the residence had fecal matter "all over," including on clothing, on stuffed animals, in vents, on walls, in their pantry with food, and throughout the kitchen. Id. at 121. Some of the fecal matter contained blood. The basement was moldy and had standing water along with plugged-in electrical devices.

The officers seized thirty-six cats, four chickens, and three dogs from the property. Warren's two cats were found still inside the Lees' van in their driveway. Officers from the Department of Child Services, the Health Department, and Animal Control also responded to the scene. Animal Control Officer Bruce Lahue observed that, in addition to the deplorable living conditions, several of the cats "were very thin," some were "leaking from . . . the rectum," and some were "vomiting as we moved about the residence." Id. at 250-52. Officer Lahue determined that "the majority of the animals appeared sick." Id. at 252. Two of the cats had to be euthanized and two other cats died in their cages shortly after they were seized.

On December 16, 2011, the State charged Randell[2] with neglect of a dependent, as a Class D felony, and four counts of cruelty to an animal, each as a Class A misdemeanor. The jury found Randell guilty as charged, and the trial court sentenced him to an aggregate term of two and one-half years, all of which were suspended to probation. This appeal ensued.

---

[2] The State also charged Samantha, and she and Randell were jointly tried. But she does not participate in this appeal.

4

**DISCUSSION AND DECISION**

**Issue One: Admission of Evidence**

Randell first asserts that the trial court abused its discretion when it admitted the evidence that had been seized pursuant to the search warrant. Our standard of review of a trial court's admission or exclusion of evidence is an abuse of discretion. Speybroeck v. State, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007). A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court. Id.

Randell argues that Officer Gilley's probable cause affidavit in support of the search warrant was so lacking that the issuance of the warrant violated his rights under the Fourth Amendment to the United States Constitution.[3] In particular, Randell argues that Officer Gilley failed to fully inform the issuing court that Warren had initially falsely reported that her cats had been stolen by Samantha; that the affidavit contains uncorroborated hearsay from Officer Lahue regarding conditions at the property; that Officer Gilley improperly invaded the curtilage of the home by entering the back yard after no one answered his knock at the front door; and that there was no probable cause to conclude that evidence of a crime would be found at the Lees' home.

We reject Randell's arguments. Officer Gilley's probable cause affidavit was substantially based on his own observations from the front yard and the front porch of the Lees' residence, along with looking through a front window into their residence. It is well established that "there is no Fourth Amendment protection for activities or items

---

[3] Randell does not argue that his rights under Article 1, Section 11 of the Indiana Constitution were violated.

that, even if within the curtilage, are knowingly exposed to the public." Trimble v. State, 842 N.E.2d 798, 802 (Ind. 2006). This applies to activities or items viewable along "[t]he route which any visitor to a residence would use," such as "walkways, driveways, and porches." Id. (quotations omitted).

Further, Officer Gilley obtained a search warrant from a neutral magistrate. As our Supreme Court has explained:

> Even if a warrant is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted in objectively reasonable reliance on the subsequently invalidated search warrant. Evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment. Put differently, the high cost associated with suppression is appropriate only where police acts are sufficiently culpable and suppression can meaningfully deter those acts. The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances.

Shotts v. State, 925 N.E.2d 719, 724 (Ind. 2010) (citations, quotations, and alterations omitted).

Thus, to prevail on appeal, Randell must demonstrate not only that the warrant is invalid for lack of probable cause but also that Officer Gilley was "sufficiently culpable" in obtaining the invalid warrant and "had knowledge, or may properly be charged with knowledge, that the search was unconstitutional." Id. In light of the fact that Officer Gilley's probable cause affidavit was substantially based on his own observations and that the law was clearly with Officer Gilley when he made those observations, we disagree with Randell that "a reasonably well trained officer would have known that the search was illegal in light of all the circumstances." Id. Thus, even if the warrant were

6

invalid, Officer Gilley's reliance on the warrant was in good faith and suppression of the evidence is not appropriate.

In his Reply Brief, Randell asserts that the good faith exception "is not applicable when the officer who signed the probable cause affidavit, and who personally obtained the warrant from the Judge, executed the warrant and, along with others, conducted the search." Reply Br. at 6 (citing Bradley v. State, 609 N.E.2d 420 (Ind. 1993)). But the authority cited by Randell in support of this proposition, Bradley, says no such thing. Indeed, the court in Bradley, following well established law, used an objective test to determine whether the good faith exception applied. Bradley, 609 N.E.2d at 424 ("Detective Sergeant Gibbs could not have had a reasonable belief in the validity of the warrant . . . .") (emphasis added); see also Shotts, 925 N.E.2d at 724 ("the exclusionary rule does not apply if the police acted in objectively reasonable reliance on the subsequently invalidated search warrant.").

In sum, there was probable cause for issuance of the warrant, and, while it is unnecessary to invoke the good faith exception to save the warrant, we conclude that Officer Gulley had an objective good faith belief that the search warrant and the subsequent search were legal. Thus, the trial court did not abuse its discretion when it admitted the evidence seized pursuant to the warrant.

### Issue Two: Sufficiency of the Evidence

Randell next asserts that the State failed to present sufficient evidence to support his convictions for cruelty to an animal.[4] When reviewing a claim of sufficiency of the

---

[4] Randell does not challenge the sufficiency of the State's evidence underlying his conviction for neglect of a dependent, as a Class D felony.

7

evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the verdict and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id. To demonstrate that Randell committed cruelty to an animal, as a Class A misdemeanor, the State was required to show that Randell had a vertebrate animal in his custody and he neglected the animal.[5] Ind. Code § 35-46-3-7(a).

Randell challenges only whether the State's evidence demonstrated that he had custody over the neglected animals. According to Randell, the neglected animals were in the custody of his wife, Samantha. But Randell wholly ignores the fact that the animals were neglected in his home as much as they were neglected in Samantha's home.

---

[5] "Neglect" means, in relevant part:

(A) endangering an animal's health by failing to provide or arrange to provide the animal with food or drink, if the animal is dependent upon the person for the provision of food or drink;

* * *

(D) failing to:
    (i) provide reasonable care for; or
    (ii) seek veterinary care for;
an injury or illness to a dog or cat that seriously endangers the life or health of the dog or cat; or

(E) leaving a dog or cat outside and exposed to:
    (i) excessive heat without providing the animal with a means of shade from the heat; or
    (ii) excessive cold if the animal is not provided with straw or another means of protection from the cold;
regardless of whether the animal is restrained or kept in a kennel.

Ind. Code § 35-46-3-0.5(4). Randell does not dispute that the animals here were neglected.

8

Further, Samantha testified that Randell "helped me when I needed help" with the animals.  Tr. at 549.  We are satisfied that the State presented sufficient evidence for the jury to find Randell guilty on each count of cruelty to an animal.

Affirmed.

VAIDIK, C.J., and BROWN, J., concur.