## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Jane H. Conley
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Nakisha Morris,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 30, 2015<br><br>Court of Appeals Case No.<br>49A04-1504-CR-170<br><br>Appeal from the Marion Superior Court<br><br>The Honorable William J. Nelson, Judge.<br><br>Trial Court Cause No.<br>49F18-1307-FD-50148 |

**Bradford, Judge.**

## Case Summary

Appellant-Defendant Nakisha Morris was involved in the theft of several items from an Indianapolis-area CVS store. Following the theft, Morris and her cohorts fled the scene in a vehicle, a description of which was broadcast over police radio. Marian University Police Officer Stephen Dickey spotted and pursued the vehicle. The pursuit began approximately one block from campus. Officer Dickey followed the vehicle around the perimeter of the campus before finally heading off the vehicle and forcing it to stop. During the pursuit, passengers in the vehicle threw many of the stolen items out of the windows.

Appellee-Plaintiff the State of Indiana ("the State") charged Morris with Class D felony theft. At trial, Morris argued that Officer Dickey was outside his jurisdiction when beginning pursuit of the vehicle and so the items found as a result of the stop should be suppressed. The trial court denied Morris's motion to suppress and found Morris guilty. On appeal, Morris argues that the trial court erred in denying her motion to suppress. We affirm.

# Facts and Procedural History

On July 31, 2013, Jay Estelle was working as the store manager of a CVS store located at 30th street and Lafayette Road in Indianapolis. (Tr. 7) As Estelle was watching the store's security monitors, he noticed three women and one man acting suspiciously. (tr. 10-15) The women were each carrying a bag and placing store merchandise into the bags. (Tr. 13-17) One of the women yelled out to the others "we got to go," at which point the four individuals "bolted" out of the store without paying for the merchandise. Tr. p. 18. The four

individuals entered a white Mazda in the store's parking lot and left. (tr. 19-20, tr. 55) At some point before the group left the store, a CVS employee called the police and Indianapolis Metropolitan Police Officer Tiffany Wren was dispatched to the CVS to investigate. (Tr. 19)

[4] Estelle followed the group in his vehicle and located them at a nearby apartment complex at which point he called the police to let them know of the group's location. (Tr. 19-20) The three women then left the apartment complex in the same vehicle. The theft was reported over police radio along with the vehicle's description and location. (Tr. 55)

[5] Shortly thereafter, Marian University Police Officer Stephen Dickey, who had heard the radio broadcast, observed a white Mazda travelling eastbound on 30th Street at "at least twice the average normal traffic speed." Tr. p. 55. Officer Dickey activated his emergency lights and siren and followed the vehicle. (Tr. 57) The Mazda turned north onto Cold Spring Road and passed another vehicle by crossing over a double yellow line into the oncoming traffic lane. (Tr. 72-73) While pursuing the Mazda, Officer Dickey and Estelle both reported that the vehicle's occupants were throwing various items out of the windows. (Tr. 21, 74) Ultimately, Officer Dickey was able to head-off the vehicle as it was passing through the Cold Spring School parking lot. (Tr. 75)

[6] Officer Tiffany Wren and two other Marian Unviersity Police Officers arrived at the scene to assist Officer Dickey. (Tr. 76, 98) After being removed from the vehicle, the suspects were identified as Shaneque Dotson, Keania Harris, and

Morris. (Tr. 98, 110) Officers found two items of Nivea lip balm in Morris's pocket. (Tr. 104) Officers also recovered several items from the side of the road believed to have been thrown from the vehicle, including personal hygiene items, several pairs of socks, and a canvas handbag. (tr. 80, 99-101, Ex. 11-14) The lip balm, socks, and hygiene items were identified by Estelle as belonging to the CVS. (Tr. 21-22)

[7] The State charged Morris with one count of Class D felony theft. (App. 17) On February 18, 2015, the trial court conducted a bench trial. (Tr. 2) The trial court admitted into evidence an aerial photo of the Marian University campus, adjacent areas, and the approximate location of the traffic stop. (Ex. 3) The trial court also admitted maps from Marian's website which illustrate the territorial extent of campus and the streets running through and adjacent to the campus. (Ex. A, B) The maps show that 30th Street is essentially the southern boundary of the campus and Cold Spring Road the eastern boundary of the majority of the campus. (id) The University also owns several houses along Winfield Avenue, Sharon Avenue, and 33rd Street—streets which make up the block immediately adjacent to the southwestern corner of campus—which are used as student and faculty housing. (Tr. 51)

[8] The trial court also admitted a resolution of the Marian University Board of Trustees dated July 27, 2013, in which the Trustees agreed to extend the jurisdiction of University police officers' jurisdiction in accordance with Indiana Code section 21-17-5-5 to include certain law enforcement activities within Marion County. (Ex. 1) The Trustees notified the Marion County Sheriff's

Office, Indiana State Police, and IMPD of the Trustees' resolution on July 22, 2014. (Ex. 2)

[9] Throughout trial, Morris objected to the admission of evidence obtained after and as a result of Officer Dickey's pursuit and stop of the Mazda, arguing that Officer Dickey was outside his jurisdiction when he began pursuit of the vehicle. (Tr. 67-72) The trial court overruled Morris's objection because the pursuit and stop occurred on streets passing through and adjacent to the Marian campus. (tr. 68, 71-72) The trial court found Morris guilty and, on April 14, 2015, sentenced Morris to 730 days with credit for two days served and the remaining 726 days suspended to probation. (App. 8, 9, 13)

# Discussion and Decision

[10] Morris argues that the trial court erred by admitting evidence found during or as a result of Officer Dickey's pursuit of Morris because Officer Dickey was outside his jurisdiction when initiating the stop.

[11] The admission or exclusion of evidence lies within the sound discretion of the trial court and we will reverse such a decision only if the trial court abused that discretion. *Kindred v. State*, 973 N.E.2d 1245, 1252 (Ind. Ct. App. 2012). An abuse of discretion occurs when the trial court's decision is clearly against the logic, facts, and circumstances presented. *Id*. We do not reweigh evidence or judge the credibility of witnesses, and we consider conflicting evidence most favorable to the trial court's ruling. *Id*. We may affirm the trial court's

judgment if it is sustainable on any legal basis supported by the record. *Ratliff v. State*, 770 N.E.2d 807, 809 (Ind. 2002).

[12] Indiana Code section 21-17-5-2 authorizes postsecondary educational institutions to "[a]ppoint police officers for the educational institution for which it is responsible." Indiana Code section 21-17-5-5 governs the extent of university police officers' jurisdictions:

> (b) A police officer appointed under this chapter may exercise the powers granted under this chapter upon any real property owned or occupied by the educational institution employing the police officer, including the streets passing through and adjacent to the educational institution. An institution may extend a police officer's territorial jurisdiction in accordance with subsection (c).
>
> (c) An institution may extend a police officer's territorial jurisdiction to the entire state, or to any part of the state, if:
>
>> (1) the board of trustees adopts a resolution specifically describing the territorial jurisdiction of a police officer appointed under this chapter; and
>>
>> (2) the board of trustees notifies the:
>>
>>> (A) superintendent of the state police department; and
>>>
>>> (B) sheriff of the county in which the institution is primarily located (or the chief of police of the consolidated city, if the institution is primarily located in a consolidated city);
>
> of the boundaries of the extended territorial jurisdiction.

[13] The undisputed evidence is that at the time Officer Dickey initially spotted the Mazda travelling eastbound on 30th Street, Officer Dickey was travelling southbound on Sharon Avenue as part of his regular patrol of the student

houses. (Tr. 54) Sharon Avenue is approximately one block west of the western boundary of the Marian campus. (ex. A) Officer Dickey turned on his emergency lights while still on Sharon Street. (Tr. 59) Once Officer Dickey turned onto 30th Street, the Mazda was still travelling on 30th and was directly in front of Marian's football stadium. (Tr. 59) Officer Dickey then pursued the vehicle east on 30th and then north on Cold Spring Road. This pursuit took the vehicles along the entire southern boundary of the University (30th Street) and along the majority of the eastern boundary (Cold Spring Road). We think that this evidence clearly establishes that Officer Dickey began and continued pursuit of the vehicle on streets which are adjacent to Marian University and/or property owned by Marian University.

[14] Even assuming Officer Dickey was not on streets which were adjacent to Marian University for purposes of Section 21-17-5-5-(b), the Marian Trustees agreed to extend the jurisdiction of University police officers in accordance with Indiana Code section 21-17-5-5(c) to include law enforcement activities within Marion County. Additionally, Indiana Code section 21-17-5-4(a)(4) places upon university officers "[t]he duty to assist and cooperate with other law enforcement agencies and law enforcement officers."

[15] Morris argues that the Marian Trustees failed to comply with Section 21-17-5-5(c)(2), requiring notice of expansion of jurisdiction to be sent to state and local

police departments, prior to the events at issue here.[1] However, Morris cites no authority to support her position or otherwise explain how the Trustee's failure to comply with an administrative notice requirement designed to facilitate communication among police departments implicates her constitutional rights against unlawful search and seizure as would be required for the evidence to be suppressed.

[16]    Evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment….[S]uppression is appropriate only where police acts are sufficiently culpable and suppression can meaningfully deter those acts. The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances.

*Shotts v. State*, 925 N.E.2d 719, 724 (Ind. 2010) (citations and quotations omitted) (Indiana Supreme Court held that it was appropriate to admit a firearm into evidence found by police while executing in good faith an Alabama arrest warrant which was later determined to be defective).

[17]    Here, Morris's argument fails for two reasons: (1) Morris's Fourth amendment rights are not violated by failure by the Marian Trustees to comply with inter-

---

[1] Marian did not send the notice under subsection (c)(2) until July 22, 2014, approximately one year after the events at issue in this case. We also note that, for purposes of her argument, Morris inaccurately assumes that Officer Dickey initiated the stop on streets which are not adjacent to Marian University and/or property owned by Marian University.

department notice requirement and (2) Officer Dickey was operating under the reasonable assumption that he was within his jurisdiction and had no reason to know that the Trustees had not given notice to local and state police departments. Accordingly, the trial court did not err in denying Morris's motion to suppress.

[18] The judgment of the trial court is affirmed.

Baker, J., and Pyle, J., concur.